# In the United States Court of Federal Claims

No. 10-140 C
(Filed: June 16, 2011)

| | | |
|---|---|---|
| ************************************** | | Motion to Dismiss; Subject Matter |
| NEWTECH RESEARCH | * | Jurisdiction; RCFC 12(b)(1); Contract |
| SYSTEMS LLC, | * | Disputes Act of 1978, 41 U.S.C. |
| | * | §§ 601-613; Submission of Claims; |
| Plaintiff, | * | Contracting Officer's Final Decision; |
| | * | Fraud Allegations Against Agency; Validity |
| v. | * | of Contracting Officer's Final Decision; |
| | * | 48 C.F.R. §§ 33.209-.210(b); Failure to |
| THE UNITED STATES, | * | Timely Submit Claim to Contracting |
| | * | Officer; 41 U.S.C. § 605(a); Untimely |
| Defendant. | * | Filing of Lawsuit; 41 U.S.C. § 609(a)(3) |
| ************************************** | | |

Thomas M. Dunlap, Leesburg, VA, for plaintiff.

Jacob Alden Schunk, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Before the court is defendant's motion to dismiss. In this action, plaintiff Newtech Research Systems LLC, the successor in interest to Sonetech Corp. ("Sonetech") and assignee of a contract awarded to Sonetech by the United States Navy ("Navy"), alleges that the Navy failed to reimburse Sonetech for costs it incurred during contract performance, made a unilateral modification to Sonetech's contract by reallocating and diverting funds designated for the contract to one of Sonetech's competitors, and engaged in fraudulent conduct during contract administration. Defendant, contending that plaintiff failed to file suit within the applicable limitations period, moves to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons discussed below, defendant's motion is granted.

## I. BACKGROUND[1]

### A. Sonetech's Contract With the Navy

Plaintiff is the successor in interest to Sonetech, a company that specialized in researching, developing, manufacturing, and distributing advanced sensor and processing systems for the defense industry.  Sonetech's principal line of business focused upon underwater sonar systems, including development of Parametric Array Dipping Sonar ("PADS") technology and equipment.  PADS can protect ships at sea from submarine attacks and sea mines.  It can outperform preexisting sonar systems both in range and in shallow water environments, and can be implemented via airborne application.

The Navy apparently recognized the importance of PADS technology in the mid-1990s and determined that PADS would be useful in the areas of mine avoidance and submarine detection.  In January 1999, the Navy issued a competitive solicitation for PADS technology research and development services related to underwater and antisubmarine warfare applications. Sonetech, which had performed numerous PADS technology-related contracts since 1992, submitted a proposal.  In January 2000, the Navy awarded Sonetech a cost-reimbursement contract that encompassed research of and development services for PADS technology in underwater, antisubmarine warfare applications.[2]  Pursuant to the contract, which was valued at $20,000,000, Sonetech provided to the Navy research and development services, as well as technical expertise and labor.

According to plaintiff, Congress appropriated $15 million for PADS technology during fiscal year 2000.  Thereafter, the Navy requested that Congress reprogram $9.8 million and represented that its request would "'alter the congressional intent for use of these funds only in that PADS technology will be for shipboard vice airborne demonstration.'"  Am. Compl. ¶ 19; see also id. ¶ 16 (alleging that the reprogrammed funding permitted research of PADS technology for shipboard application).  Congress eventually reprogrammed $9.8 million reserved solely for

---

[1]  The facts are derived from the amended complaint ("Am. Compl."); exhibits appended to defendant's motion to dismiss ("Def.'s Ex."); and exhibits appended to plaintiff's response to defendant's motion to dismiss ("Pl.'s Ex."), including an affidavit of Harvey C. Woodsum, Ph.D., president and chairman of Sonetech ("Woodsum Aff.").  Where, as here, a motion to dismiss for lack of subject matter jurisdiction challenges the truth of jurisdictional facts alleged in the complaint, the court is authorized to consider relevant evidence in order to resolve the factual dispute.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); infra Part II.A.

[2]  A cost-reimbursement contract "provide[s] for payment of allowable incurred costs" and "establish[es] an estimate of total cost for the purpose of obligating funds and establishing a ceiling that the contractor may not exceed (except at its own risk) without the approval of the contracting officer."  48 C.F.R. § 16.301-1 (1999).

PADS technology in the 2001 omnibus spending bill, transferring those funds from the Naval Air Systems Command budget to the Office of Naval Research ("ONR").  Although these reprogrammed funds were promised to Sonetech for its contract, the Navy, in September 2001, diverted approximately $1.86 million to the Kildare Corporation ("Kildare"), a subcontractor under the contract at issue and one of Sonetech's competitors, for a contract that was unrelated to PADS technology.  According to plaintiff, the diversion of funds to Kildare constituted the Navy's "absolute, definite, unconditional, and unequivocal manifestation to refuse to perform the Contract." Id. ¶ 36.  According to Dr. Woodsum, Sonetech "was threatened with project cancellation and with 'never receiving another nickel from the Navy again' if [it] objected to the Navy's 'spend plan' for use of the reprogrammed funds." Pl.'s Ex. 1 at 6 (Woodsum Aff. ¶ 44); see also id. (stating that there "would be severe consequences if objections to [the] ONR's use of the reprogrammed funds for Kildare's project occurred").

## B.  Issues Arising During Contract Performance

Absent from the amended complaint are allegations concerning three other issues that arose during Sonetech's contract performance.  One such issue involved a dispute between Sonetech and its subcontractor, Kildare, that resulted in Kildare's withdrawal from the contract. According to Dr. Woodsum, Kildare's withdrawal had a very significant impact on Sonetech's costs, but the Navy refused to address Sonetech's concerns.  Then, in August 2002, the Navy issued a stop work order to Sonetech because Sonetech's billed costs had exceeded the maximum amount allowed under the contract.  Five months later, the ONR provided an additional $1 million to fund Sonetech's contract, but that amount, Dr. Woodsum stated, "did not factor in the approximately 6-month delay in re-starting" the contract or any impact the delay had upon the costs Sonetech incurred. Id. at 9 (Woodsum Aff. ¶ 62).

The second issue involved a purportedly "difficult" relationship between Sonetech and the ONR. Id. (Woodsum Aff. ¶ 64).  According to Dr. Woodsum, a new program officer, who was assigned to the contract after the ONR provided additional funding, "exhibited a hostile attitude toward Sonetech [and] towards the project . . . ."[3] Id. (Woodsum Aff. ¶ 63).  It appears that a series of communications sent by Sonetech to the ONR regarding the completion date of the contract went unanswered.  Despite Sonetech's belief that its performance period concluded at the end of September 2003, the ONR issued another stop work order to Sonetech on September 15, 2003, because the performance period had apparently ended on July 31, 2003.[4]

---

[3]  Dr. Woodsum's statements about the new program officer suggest the existence of an acrimonious relationship between Sonetech and the ONR. See, e.g., Pl.'s Ex. 1 at 9 (Woodsum Aff. ¶¶ 63, 65 (describing the new program manager as a "chemist" who "had no knowledge of Sonar[] or any other technical area related to our Task" and noting that the new program manager previously directed a project that "was reputed to have a 97% failure rate in completing its tasks and transition of its projects to useful status")).

[4]  A copy of Sonetech's contract with the Navy is not part of the record.

Sonetech sought reimbursement for over $130,000 in costs incurred from July 31, 2003, to September 15, 2003, but the ONR refused to compensate Sonetech for that work.  According to Dr. Woodsum, the ONR, in an effort to "coerce[] uncompensated services from Sonetech," threatened Sonetech, and Sonetech believed that the Navy's conduct violated the Antideficiency Act.  Id. at 10 (Woodsum Aff. ¶¶ 69-71, 74).  Sonetech eventually requested an investigation into what Dr. Woodsum characterized as a "cover-up of an [Antideficiency Act] violation."  Id. at 10-11 (Woodsum Aff. ¶ 74).  The investigation, which concluded in 2005, must not have resulted in a finding of wrongdoing because Dr. Woodsum later requested that Holly Adams, the ONR Inspector General, conduct a separate investigation.

The third issue involved a determination of what costs incurred by Sonetech during contract performance were deemed "allowable."  After the Antideficiency Act investigation concluded in 2005, the Defense Contract Audit Agency ("DCAA") agreed to reaudit costs incurred by Sonetech that were in dispute.  According to Dr. Woodsum, the DCAA reversed a prior determination classifying various costs incurred by Sonetech as "unallowable" and determined that many of those costs were, in fact, "allowable."  Id. at 11 (Woodsum Aff. ¶ 78).  The DCAA then issued a final rate determination in March 2007.  Based upon the DCAA's determination, Sonetech submitted a letter to the contracting officer in July 2007 seeking $964,000 in unreimbursed costs.

## C.  Sonetech's Efforts to Obtain an Equitable Adjustment and Recover Costs From the Navy

Prior to plaintiff filing suit in the United States Court of Federal Claims ("Court of Federal Claims"), Sonetech made several attempts to obtain relief from the Navy.[5]  On October 22, 2003, Sonetech submitted a letter to Brian D. Glance, a contracting officer at the ONR, requesting an equitable adjustment for excess costs.  See Def.'s Ex. A (referencing Sonetech's October 22, 2003 letter in a November 22, 2004 letter to Mr. Glance).  Mr. Glance denied Sonetech's request on October 30, 2003.  See Def.'s Ex. A (characterizing the substance of Mr. Glance's October 30, 2003 letter denying Sonetech's request).

Over one year later, on November 22, 2004, Sonetech submitted a letter to Mr. Glance in which it demanded $172,254 and proposed a funding modification to allow Sonetech to recover its over-ceiling costs.  Sonetech's monetary demand included $42,242 in rate-adjusted costs and $131,012 in overrun costs purportedly incurred during fiscal year 2001.  Alternatively, Sonetech requested a final determination from Mr. Glance denying its claim to ensure that the record was complete in the event that the matter proceeded to litigation.  Sonetech certified its claim on January 31, 2005.  Mr. Glance construed Sonetech's letter to assert two separate claims and

---

[5]  Plaintiff alleges in the amended complaint that "Sonetech requested a written final decision of the contracting officer pursuant to 41 U.S.C. § 605, which was denied by the Navy on March 4, 2009," Am. Compl. ¶ 32, but omits any reference to Sonetech's previous attempts to obtain relief.

denied them both on April 11, 2005.  He explained that Sonetech's claims "involve[d] the incurrence [of] costs in excess of the negotiated cost ceiling of the contract as governed by the Limitation of Cost clause."[6]  Def.'s Ex. B at 4.  Mr. Glance apprised Sonetech of its rights and indicated that it could, in lieu of appealing his decision to the Armed Services Board of Contract Appeals ("ASBCA"), bring an action in the Court of Federal Claims within twelve months.

On July 18, 2007, shortly after the DCAA issued its final rate determination, Sonetech submitted another letter to Mr. Glance seeking recovery for unbilled rate adjustments for Fiscal Years 2002 and 2003.  Sonetech requested an equitable adjustment totaling $964,666,[7] stating, among other things, its contention that

> [m]ismanagement of project funds by ONR contributed to a situation where the Navy did not have proper funding available . . . and therefore introduced a long delay in the project while ONR sought funds to continue.  An improper reprogramming action by ONR, in opposition to Congressional Appropriation and Authorization for the program funds[] effectively defunded the PADS . . . effort by $1,866,636, removing funds that could have been used by ONR to adjust [the] contract ceiling to handle contingencies . . . .

Def.'s Ex. C at 3.  Sonetech did not request that the Navy compensate it for $1,866,636 in funds that were purportedly diverted to Kildare.  Sonetech certified its claim on July 30, 2007.

On December 20, 2007, Darien Demps, another contracting officer at the ONR, responded to Sonetech's July 18, 2007 letter.  According to Mr. Demps, Sonetech "failed to meet [its] contractual obligation to notify the Government upon being 60 days from having incurred costs amounting to 75% of the funds allotted to the contract."  Def.'s Ex. D at 3.  Mr. Demps indicated that the contract's limitation of cost provision "expressly state[d] that the Government [wa]s not obligated to reimburse the conractor for costs incurred in excess of the total amount allotted by the Government to the contract. . . .  The decision to continue incurring costs in excess of the established estimated cost . . . without first obtaining an allotment of additional

---

[6]  According to Mr. Glance, Sonetech's claims reflected its failure to comply with its contractual duty to monitor costs and avoid exceeding the contract ceiling.  Indeed, Mr. Glance noted that Sonetech was cautioned not to incur excess costs on several occasions during contract performance.  Mr. Glance explained that he "did not authorize or direct Sonetech to continue to incur costs to perform the contract after its end date."  Def.'s Ex. B at 5.  Furthermore, Mr. Glance stated that, "once [Sonetech's] expenditures of money approached the contractually stipulated cost ceiling, [it was] obligated to notify [him], in advance, and either obtain authorization for additional funding[] or discontinue work to prevent an overrun."  Id.

[7]  Sonetech's July 18, 2007 letter included six attachments that are not part of the record before the court.  It appears that Sonetech arrived at the sum of $964,666 through calculations set forth in these attachments.

funds was solely that of [Sonetech]."  Id. at 4; see also id. at 5 (indicating that "Sonetech had a continuing duty to monitor its costs against existing and emerging expenses" and determining that the "record amply demonstrate[d] that such additional indirect costs were reasonably foreseeable at the times that those costs were being incurred").  Mr. Demps also rejected Sonetech's assertion that the Navy improperly diverted funds intended for PADS technology, explaining to Sonetech that

> [t]he contractor's entitlement to reimbursement is limited by the amount of funds obligated under the contract.  Other financial resources potentially available to an agency have no bearing on the duty of a contractor to comply with the terms and conditions of the contract as awarded.  Moreover, your point on the propriety of the reprogramming action, to which you refer to as "improper," is contradicted by the very document you submitted with your letter of July 18, 2007[.] . . . . [That document] resulted from Congressional approval of an executive branch determination to reallocate available financial resources for a higher priority project.  Such agency action does not form the basis of a contractor claim against the Government.

Id. at 5.  Determining that there was no contractual basis to provide any additional compensation to Sonetech, Mr. Demps denied Sonetech's request in its entirety.  Mr. Demps informed Sonetech that "[t]his [was] the final decision of the Contracting Officer," apprised Sonetech of its rights, and indicated that Sonetech could, in lieu of appealing his decision to the ASBCA, bring an action in the Court of Federal Claims within twelve months.  Id. at 6.

The record does not indicate that Sonetech appealed Mr. Demps's decision.  Instead, Sonetech, on February 27, 2008, submitted a three-page letter to Mr. Demps in which it presented additional information and asked Mr. Demps to reconsider his decision.  A response from Mr. Demps, if any, is not part of the record.

In an undated letter to Inspector General Adams, Dr. Woodsum alleged that the Navy violated federal law with respect to its administration of Sonetech's contract and handling of Sonetech's requests for reimbursement.  Dr. Woodsum opined about the nature of an investigation to which Sonetech was subjected and the effects that investigation had upon the Navy's relationship with Sonetech and the Navy's interest in PADS technology.[8]  Dr. Woodsum also provided the factual basis for what he believed were violations of the Antideficiency Act by the Navy.  Inspector General Adams responded to Dr. Woodsum on March 4, 2009, and

---

[8]  Dr. Woodsum described the investigation to which Sonetech was subjected as "suspicious," Pl.'s Ex. 5 at 2, and opined that a "disgruntled employee at Sonetech" made a "false accusation" that prompted the investigation, id. at 3.  He also stated his belief that "someone, a competitor perhaps, may have actively encouraged and solicited this former employee to make the original fallacious complaint, possibly with an offer of personal gain for so doing."  Id.

determined that "there is no sufficient evidence to substantiate your allegations that [the ONR] . . . improperly conducted acquisition malpractice or other contract irregularities.  As a result, I am closing your case . . . ."  Pl.'s Ex. 7; cf. Am. Compl. ¶ 32 (alleging that a "written final decision of the contracting officer" was issued on March 4, 2009).

### D.  Plaintiff's Amended Complaint

Plaintiff filed a pro se complaint in the Court of Federal Claims on March 3, 2010, but later retained counsel and filed an amended complaint on August 16, 2010.[9]  In the amended complaint, plaintiff asserts two claims based upon Sonetech's contract.  In a claim for unreimbursed costs, plaintiff alleges that the Navy breached the contract by refusing and failing to perform its obligation.  Plaintiff seeks damages in the amounts of $960,000 for actual costs incurred to perform the contract and $171,000 for costs incurred to perform additional services for the Navy.  According to plaintiff, the Navy interrupted progress during contract performance and refused to pay the remainder of the contract.[10]

In a claim for improper diversion of funds, plaintiff alleges that the Navy breached its duty of good faith and fair dealing by making certain representations to Sonetech and subsequently failing to keep its promise.  According to plaintiff, the Navy refused to perform the entire contract by unlawfully diverting $1.8 million in funds that were specifically allocated to PADS technology and utilizing those funds to award a contract to Kildare that bore no relation to PADS technology.  It alleges that the Navy's diversion of funds resulted in inadequate funding and deprived Sonetech of compensation and reimbursements under the contract.  Plaintiff does not expressly claim any monetary damages stemming from the Navy's alleged improper diversion of PADS technology funding to Kildare.  Nevertheless, plaintiff seeks a total of $2,851,000 in damages, an amount that appears to include the approximately $1.8 million of

---

[9]  Pursuant to RCFC 83.1(a)(3), an individual who is not an attorney "may represent oneself or a member of one's immediate family . . . ."  However, RCFC 83.1(a)(3) expressly prohibits a pro se litigant from representing "a corporation, an entity, or any other person in any proceeding before this court."  Although the parties dispute whether plaintiff's original pro se complaint was properly before the court, with plaintiff contending that its original pro se complaint preserved its rights, defendant never moved to strike the pro se complaint.  The court ultimately need not resolve the issue because, as explained below, both the pro se complaint and amended complaint were filed after the applicable statute of limitations periods expired.

[10]  In his undated letter to Inspector General Adams, Dr. Woodsum described various "suspicious" and criminal investigations to which Sonetech was subjected, Pl.'s Ex. 5 at 2, and suggested that those investigations "seriously impaired" its ability to perform under the contract, id. at 3; see also Pl.'s Ex. 1 at 6 (Woodsum Aff. ¶ 41 (describing a five-year investigation that resulted in a finding of no wrongdoing)).  Sonetech also claimed that the Navy's lack of funding delayed contract performance by an additional six months.  Plaintiff does not include these allegations in the amended complaint.

diverted funds.

The court heard argument on defendant's motion to dismiss on May 18, 2011. Thereafter, the court requested supplemental briefing in light of plaintiff's reliance upon new authority during oral argument. Briefing was completed on June 1, 2011, and the court is now prepared to rule.

## II.  LEGAL STANDARDS

### A.  RCFC 12(b)(1) Motion to Dismiss

Defendant moves to dismiss the complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The court's "general power to adjudicate in specific areas of substantive law . . . is properly raised by a [Rule] 12(b)(1) motion," Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999), and the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); see also Reynolds, 846 F.2d at 748 (providing that jurisdiction must be established by a preponderance of the evidence). When deciding a motion to dismiss for lack of subject matter jurisdiction, the court generally assumes all factual allegations are true and draws all reasonable inferences in the plaintiff's favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 814-19 (1982); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (stating that "unchallenged allegations of the complaint should be construed favorably to the pleader"). However, if the defendant or the court questions jurisdiction, the plaintiff cannot rely solely on allegations in the complaint but must bring forth relevant, adequate proof to establish jurisdiction. See McNutt, 298 U.S. at 189.

When an RCFC 12(b)(1) motion challenges jurisdictional facts alleged in the complaint, the court "may find it necessary to inquire into jurisdictional facts that are disputed." Rocovich v. United States, 933 F.2d 991, 993 (Fed. Cir. 1991). Thus, the court is permitted to engage in fact-finding, Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999), and may consider "evidentiary matters outside the pleadings," Indium Corp. of Am. v. Semi–Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985); accord Reynolds, 846 F.2d at 747; see also 2 James Wm. Moore et al., Moore's Federal Practice § 12.30 (3d ed. 2009) ("[T]he court need not confine its evaluation to the face of the pleadings, but may review or accept any evidence . . . ."). Here, defendant challenges the jurisdictional facts alleged in the complaint. As such, the parties are able to introduce–and the court is permitted to examine–evidence beyond the four corners of the complaint in order for the court to resolve disputed jurisdictional facts.[11] See 2 Moore et al.,

_____

[11] At oral argument, plaintiff urged the court to consider only the allegations set forth in the amended complaint, rather than the documents appended to defendant's motion to dismiss. According to plaintiff, sole consideration of the allegations set forth in the amended complaint demonstrates that the court possesses subject matter jurisdiction in this case. Furthermore,

---

plaintiff asserted that the proper standard for determining jurisdiction requires the court to issue an order authorizing the parties to conduct jurisdictional discovery and schedule an evidentiary hearing during which plaintiff can fully present its case in support of jurisdiction on the merits. Indeed, plaintiff explained that it made the "procedural assumption" that a motion for summary judgment would be the most appropriate method through which to resolve any jurisdictional question.

Plaintiff's contention that the court cannot consider any evidence beyond the facts set forth within the four corners of the amended complaint generally applies to RCFC 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted, not RCFC 12(b)(1) motions. When ruling upon an RCFC 12(b)(6) motion, the court's primary consideration is the allegations set forth in the complaint. Feldman v. Law Enforcement Assocs. Corp., No. 5:10-CV-08-BR, 2011 WL 891447, at *10 n.8 (E.D.N.C. Mar. 10, 2011); accord Speaker v. U.S. Dep't of HHS Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010) ("[I]t is generally true that the 'scope of the review must be limited to the four corners of the complaint.'" (quoting St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002))); Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010) (explaining that a Rule 12(b)(6) motion "presents a pure legal questions, based on allegations contained within the four corners of the complaint," thereby enabling the trial court "to make a determination on the merits"); Doyle v. Okla. Bar Ass'n, 998 F.2d 1559, 1566 (10th Cir. 1993) (confining review of a Rule 12(b)(6) dismissal "to the allegations of the complaint and taking them as true"); Durgin v. Town of Madison, No. 3:10-CV-347 (VLB), 2011 WL 692989, at *4 (D. Conn. Feb. 18, 2011) (stating that review of a Rule 12(b)(6) motion "is generally limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference'" (quoting McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007))). However, the court is not always restricted to the four corners of the complaint when adjudicating RCFC 12(b)(6) motions. Indeed, courts have

> allowed consideration of matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; these items may be considered by the district judge without converting the motion into one for summary judgment.

5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

As for its "procedural assumption," plaintiff again confuses the standard of review for an RCFC 12(b)(1) motion with that governing an RCFC 12(b)(6) motion. Pursuant to RCFC 12(d), the court must treat an RCFC 12(b)(6) motion as one for summary judgment under RCFC 56 if matters outside the pleadings are presented to and considered by the court. Consideration of certain matters outside the pleadings, such as those listed above, do not warrant conversion in connection with an RCFC 12(b)(6) motion, and no conversion of an RCFC 12(b)(1) motion into

supra, ¶ 12.30 ("Because a factual Rule 12(b)(1) motion involves the court's 'very power to hear the case,' the court may weigh the evidence to confirm its jurisdiction."). Ultimately, the court must dismiss the complaint if the determines that it lacks subject matter jurisdiction. Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); see also RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

## B.  Subject Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); see also Matthews, 72 Fed. Cl. at 278 (stating that subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case").  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868).  The parties or the court sua sponte may challenge the court's subject matter jurisdiction at any time.  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

The ability of the Court of Federal Claims to entertain suits against the United States is limited.  "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941).  A waiver of immunity "cannot be implied but must be unequivocally expressed."  United States v. King, 395 U.S. 1, 4 (1969).

The Tucker Act provides that the Court of Federal Claims possesses jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1) (2006).  It also confers upon the Court of Federal Claims "jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 [("CDA")], including . . . other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."  Id. § 1491(a)(2).

## C.  The CDA

Plaintiff alleges that the Court of Federal Claims possesses jurisdiction over the complaint pursuant to the CDA, 41 U.S.C. §§ 601-613 (2006).  "Under the CDA, this Court's jurisdiction is predicated upon a contractor meeting two fundamental requirements: (1) the submission of a written claim to the contracting officer and (2) the agency's issuance of a final

one for summary judgment is necessary when the court considers matters outside the pleadings. 2 Moore et al., supra, ¶ 12.30.

decision." OK's Cascade Co. v. United States, 87 Fed. Cl. 739, 745 (2009); see also James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996) ("[F]or the court to have jurisdiction under the CDA, there must be both a valid claim . . . and a contracting officer's final decision on that claim."). The CDA provides that, if a contractor has a dispute with the government "relating to a contract," then the contractor shall submit a written claim to the contracting officer within six years after the accrual of the claim. 41 U.S.C. § 605(a). For claims that are greater than $100,000, the contractor must certify, among other things, that the claim is made in good faith. Id. § 605(c)(1); accord 48 C.F.R. § 52.233-1(c) ("[A] written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the [CDA] until certified . . . .").

The contracting officer must issue a decision "within a reasonable time," after having considered factors such as the "size and complexity of the claim" and the "adequacy of the information in support of the claim." 41 U.S.C. § 605(c)(3); see also L & D Servs., Inc. v. United States, 34 Fed. Cl. 673, 677 (1996) ("Section 605(c) establishes maximum periods within which a contracting officer must issue a decision on a claim–either within 60 days or within a reasonable time."). The contracting officer's decision must be in writing, "shall state the reasons for the decision reached, and shall inform the contractor of his rights as provided in this chapter." 41 U.S.C. § 605(a); accord 48 C.F.R. § 33.211 (1999). A contracting officer's failure to issue a decision "within the period required" is deemed to be a decision denying the claim. 41 U.S.C. § 605(c)(5).

A contracting officer's decision is final unless the contractor makes an authorized appeal. Id. § 605(b). An appeal of the contracting officer's decision to the Court of Federal Claims must be filed within one year after its receipt of the decision. See James M. Ellett Constr. Co., 93 F.3d at 1541 ("The CDA grants the court jurisdiction over actions brought on claims within twelve months of a contracting officer's final decision."); see also Pathman Constr. Co. v. United States, 817 F.2d 1573, 1576 (Fed. Cir. 1987) ( "[T]he twelve-month limitations period for bringing suit . . . does not begin to run until the contracting officer has issued his decision on the contractor's claim."); Envtl. Safety Consultants, Inc. v. United States, 95 Fed. Cl. 77, 92 (2010) ("Under the CDA, a contractor must file its complaint in the Court of Federal Claims within twelve months of receipt of a final [contracting officer's] decision; otherwise, the complaint is outside the statute of limitations and must be dismissed."). Additionally, the contractor's appeal must "arise from the same operative facts" and seek "essentially the same relief" as the claim submitted to the contracting officer. Scott Timber Co. v. United States, 333 F.3d 1358, 1365 (Fed. Cir. 2003); see also id. at 1365-66 (concluding that this requirement is jurisdictional in nature).

### III. DISCUSSION

In its motion to dismiss, defendant contends that plaintiff failed to file suit in the Court of Federal Claims within twelve months after Sonetech received final decisions from the contracting officers denying its claims for unreimbursed costs. According to defendant, two

Navy contracting officers denied Sonetech's claims for unreimbursed costs in final decisions dated April 11, 2005, and December 20, 2007, but plaintiff waited until 2010 to challenge those decisions.  As such, defendant argues that plaintiff's claim for unreimbursed costs is barred by the twelve-month limitations period set forth in 41 U.S.C. § 609(a)(3).  Additionally, defendant argues that plaintiff's improper diversion of funds claim is untimely because Sonetech failed to file that claim with the contracting officer within six years of its accrual.  Consequently, defendant contends that the court lacks jurisdiction over the amended complaint.

Plaintiff, asserting that its claim for unreimbursed costs is timely, argues that it raised issues of fraud and bad faith in its 2004 and 2007 letters to the contracting officer.  Citing 48 C.F.R. § 33.210, plaintiff contends that both contracting officers lacked the authority to issue any final decisions because they were precluded from addressing or resolving claims involving fraud or bad fath.  Thus, plaintiff argues that those final decisions were invalid and did not trigger the twelve-month limitations period for filing suit in the Court of Federal Claims.  With respect to its improper diversion of funds claim, plaintiff alleges that this claim was denied by the contracting officer on March 4, 2009,[12] and that its original complaint was timely filed within twelve months of that denial.[13]

### A.  Plaintiff's Unreimbursed Costs Claim

Defendant proffered evidence that Sonetech, on November 22, 2004, and July 18, 2007, submitted letters to the contracting officer requesting reimbursement of costs.[14]  Mr. Glance denied Sonetech's November 22, 2004 request on April 11, 2005.  Mr. Demps denied Sonetech's July 18, 2007 request on December 20, 2007.  There is no evidence in the record that suggests Sonetech appealed the contracting officers' determinations to the ASBCA or filed suit in the Court of Federal Claims prior to March 3, 2010, the date on which plaintiff filed its pro se complaint.

---

[12]  The amended complaint refers to a "final decision of the contracting officer" issued on March 4, 2009.  Am. Compl. ¶ 32.  The only document in the record dated March 4, 2009, is a letter from ONR Inspector General Adams.  Pl.'s Ex. 7; infra Part III.B.2.

[13]  In its brief, plaintiff proffers an alternative argument: Inspector General Adams lacked the authority to issue a final decision denying Sonetech's claim and, as such, plaintiff was not required to file suit within twelve months after receipt of an invalid decision.

[14]  Sonetech's November 22, 2004 letter indicated that Sonetech had previously submitted a letter to the contracting officer requesting reimbursement for $172,254 on October 22, 2003.  Sonetech's October 22, 2003 letter and Mr. Glance's October 30, 2003 denial of Sonetech's request are not part of the record.

1. **Sonetech Submitted "Claims" in 2004 and 2007 to the Navy's Contracting Officers**

Plaintiff fails to allege in the amended complaint any facts related to Sonetech's efforts to obtain relief from the Navy in 2004 and 2007. Cf. Am. Compl. ¶ 32 (alleging that Sonetech "requested a written final decision of the contracting officer pursuant to 41 U.S.C. § 605, which was denied by the Navy on March 4, 2009"). As a threshold matter, the court addresses whether Sonetech submitted "claims" to the contracting officer in 2004 and 2007.

The CDA does not define the meaning of the word "claim." Therefore, in order to determine whether a contractor's demand constitutes a "claim," the court must look to the regulations "implementing the CDA, the language of the contract in dispute, and the facts of the case." Reflectone, Inc. v. Dalton, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc) (citing Garrett v. Gen. Elec. Co., 987 F.2d 747, 749 (Fed. Cir. 1993)).

The Federal Acquisition Regulation defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract." 48 C.F.R. § 52.233-1(c). "[T]he phrase 'as a matter of right' in the regulatory definition of a 'claim' requires only that the contractor specifically assert entitlement to the relief sought. That is, the claim must be a demand for something due or believed to be due . . . ." Alliant Techsys., Inc. v. United States, 178 F.3d 1260, 1265 (Fed. Cir. 1999); see also Precision Pine & Timber, Inc. v. United States, 62 Fed. Cl. 635, 643 (2004) (defining a "claim" as "'[a] demand for something as due; an assertion of a right to something'" (quoting 3 Oxford English Dictionary 261 (2d ed. 1989))). Additionally, a valid CDA claim seeking monetary relief must request a "sum certain." James M. Ellett Constr. Co., 93 F.3d at 1541-42. The "sum certain" requirement is satisfied "when the amount in dispute can be determined by a simple mathematical calculation." Hamza v. United States, 31 Fed. Cl. 315, 322 (1994).

The CDA contains "no requirement . . . that a 'claim' must be submitted in any particular form or use any particular wording." Contract Cleaning Maint., Inc. v. United States, 811 F.2d 586, 592 (Fed. Cir. 1987); see also GPA-I, LP v. United States, 46 Fed. Cl. 762, 767 (2000) (noting that a contractor need not employ "'[m]agic words'" (quoting Transam. Ins. Corp. ex rel. Stroup Sheet Metal Works v. United States, 973 F.2d 1572, 1578 (Fed. Cir. 1992)). Rather, "[a]ll that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis . . . of the claim."[15] Contract Cleaning Maint., Inc., 811 F.2d at 592. In other words, "the intent of the 'claim' governs." Transam. Ins. Corp., 973 F.2d at 1576. Furthermore, a series of correspondence may, when taken together, comprise a clear and unequivocal statement such that it provides the contracting officer with notice of the basis for the contractor's claim. See Kalamazoo Contractors, Inc. v. United States, 37 Fed. Cl. 362, 368 (1997); accord GPA-I, LP, 46

---

[15] As noted in Part II.C, supra, the contractor must certify claims that are greater than $100,000. 41 U.S.C. § 605(c)(1); 48 C.F.R. § 52.233-1(c).

Fed. Cl. at 767.  But cf. GPA-I, LP, 46 Fed. Cl. at 767 (noting that "a contractor's suggestion of a meeting and expression of hope that a dispute could be settled does not prevent a writing from being a CDA claim").  Nevertheless, "[c]orrespondence which indicates disagreement during negotiations . . . does not qualify as a valid CDA claim," Kalamazoo Contractors, Inc., 37 Fed. Cl. at 368, and a contractor's own characterization of its demand as a "claim" "does not automatically render the demand a valid claim for purposes of the CDA," Exec. Court Reporters, Inc. v. United States, 29 Fed. Cl. 769, 774 n.7 (1993) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1394 (Fed. Cir. 1987)).

The CDA explicitly requires that claims be submitted to the contracting officer: "All claims by a contractor against the government relating to a contract shall . . . be submitted to the contracting officer for a decision."  41 U.S.C. § 605(a) (emphasis added); see also James M. Ellett Constr. Co., 93 F.3d at 1541-42 (requiring, as a jurisdictional prerequisite, that the contracting officer issue a final decision on the claim).  Yet, the CDA "does not . . . require that the claims be sent only to the contracting officer, or necessarily directly to that officer."  Neal & Co. v. United States, 945 F.2d 385, 388 (Fed. Cir. 1991).  As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") stated in Dawco Construction, Inc. v. United States, the CDA "simply identifies the person to whom the dispute is to be 'submitted' for a final decision" and that, "once a claim is made, the parties must 'commit' the claim to the contracting officer and 'yield' to his authority to make a final decision."  930 F.2d 872, 880 (Fed. Cir. 1991) (emphasis added), overruled in part on other grounds by Reflectone, Inc., 60 F.3d at 1579.

Plaintiff ultimately does not dispute that Sonetech's November 22, 2004, and July 18, 2007 letters addressed to Mr. Glance were "claims" for purposes of the CDA.[16]  On November 22, 2004, Sonetech submitted a written demand to the contracting officer seeking, as a matter of right, the payment of a sum certain that it believed was owed under the contract.  See Def.'s Ex. A at 1 (stating an "official demand" for equitable adjustments totaling $172,254 in costs allegedly incurred), 3 (claiming that those costs "validly incurred in performance of the contract"); see also Alliant Techsys., Inc., 178 F.3d at 1265; 48 C.F.R. § 52.233-1(c).  Sonetech requested that Mr. Glance, in his capacity as the contracting officer, either award the equitable adjustments claimed or issue a "Contracting Officer['s] final Determination denying Sonetech's claim for these costs, together with the requisite rationale for same."  Def.'s Ex. A at 4.  Sonetech certified its claim on January 31, 2005.  The court concludes that Sonetech's November 22, 2004 letter demanding payment of $172,254 constitutes a "claim" for purposes of the CDA.

On July 18, 2007, Sonetech submitted a written demand to the contracting officer seeking, as a matter of right, the payment of a sum certain that it believed was owed under the contract.  See Def.'s Ex. C at 1 (enclosing a rate adjustment voucher "in order to recover unbilled rate adjustments for Fiscal Years 2002 and 2003" and asserting that Sonetech was "entitled to

---

[16]  At oral argument, however, plaintiff characterized these letters as "preliminary claims," explaining that Sonetech could not have ascertained a final sum certain purportedly due under the contract at the time it made the submissions.

recover costs from rate adjustments incurred under the subject contract"), 4 (attaching supporting documentation used to calculate $964,666 in costs allegedly incurred); see also Alliant Techsys., Inc., 178 F.3d at 1265; 48 C.F.R. § 52.233-1(c).  Sonetech requested that Mr. Glance, in his capacity as the contracting officer, "process . . . a Contract Funding Modification . . . ."  Def.'s Ex. C at 1.  Sonetech certified its claim on July 30, 2007.  The court concludes that Sonetech's July 18, 2007 letter demanding payment of $964,666 constitutes a "claim" for purposes of the CDA.

Next, the court addresses whether the responses denying Sonetech's claims provided by Messrs. Glance and Demps were final decisions of the contracting officer.

## 2. The Navy's Contracting Officers Issued Valid, Final Decisions Denying Sonetech's Claims

Mr. Glance construed Sonetech's November 22, 2004 claim letter as setting forth two separate claims.  He denied these claims on April 11, 2005: "This letter constitutes a Final Decision of the Contracting Officer. . . .  I have reviewed your claims and I have concluded that both claims must be denied."  Def.'s Ex. B at 1.  Mr. Glance's written decision contained an explanation of why Sonetech's claims were denied,  informed Sonetech that the written decision constituted "the final decision of the Contracting Officer," and apprised Sonetech that it could either appeal the final decision to the ASBCA within ninety days of receipt of the decision or bring an action in the Court of Federal Claims within twelve months of receipt of the decision.  Id. at 6; accord 41 U.S.C. § 605(a); 48 C.F.R. § 33.211.  The court therefore concludes that Mr. Glance's April 11, 2005 denial of Sonetech's November 22, 2004 claim constituted a final decision of the contracting officer for purposes of the CDA.

In his December 20, 2007 response to Sonetech's July 18, 2007 claim, Mr. Demps reminded Sonetech that its claim for indirect costs purportedly incurred in 2001 was already addressed by Mr. Glance in a final decision dated April 11, 2005.  Mr. Demps then denied Sonetech's July 18, 2007 claim: "[T]his letter constitutes the Contracting Officer's Final Decision for the subject claim.  After thorough review, I have concluded that the subject claim must be denied in its entirety."  Def.'s Ex. D at 1.  Mr. Demps's decision contained an explanation of why Sonetech's claim was denied and advised Sonetech that its "contention that [the] ONR 'improperly' reprogrammed funds intended for this order [was] both factually incorrect and irrelevant to the claim under consideration."  Id. at 5.  Mr. Demps also informed Sonetech that the decision constituted "the final decision of the Contracting Officer" and that Sonetech could either appeal the final decision to the ASBCA within ninety days of receipt of the decision or bring an action in the Court of Federal Claims within twelve months of receipt of the decision.  Id. at 6; accord 41 U.S.C. § 605(a); 48 C.F.R. § 33.211.  The court therefore concludes that Mr. Demps's December 20, 2007 denial of Sonetech's July 18, 2007 claim constituted a final decision of the contracting officer for purposes of the CDA.

Plaintiff, relying exclusively upon 48 C.F.R. § 33.210(b), contends that it can maintain a claim for unreimbursed costs because Messrs. Glance and Demps lacked the authority to issue final decisions resolving claims alleging fraud or bad faith against the Navy.  Section 33.210(b) provides:

> Except as provided in this section, contracting officers are authorized, within any specific limitations of their warrants, to decide or resolve all claims arising under or relating to a contract subject to the [Contract Disputes] Act. . . .   The authority to decide or resolve claims does not extend to–
>
> . . . .
>
> (b) The settlement, compromise, payment or adjustment of any claim involving fraud.

48 C.F.R. § 33.210(b).  Plaintiff interprets section 33.210(b) to preclude a contracting officer from deciding or resolving any claim asserting fraud, whether against a contractor or an agency, because the regulation refers generally to "fraud" without any qualifying or limiting language.

Plaintiff's argument, however, relies solely upon a contorted reading of this regulation. Plaintiff's tunnel vision approach completely ignores the overall regulatory scheme of which section 33.210(b) is a part.  For example, section 33.209, the regulation immediately preceding section 33.210, provides:

> If the contractor is unable to support any part of the claim and there is evidence that the inability is attributable to misrepresentation of fact or to <u>fraud on the part of the contractor, the contracting officer shall refer the matter to the agency official responsible for investigating fraud.</u>

<u>Id.</u> § 33.209 (emphasis added).  By its terms, section 33.209 requires a contracting officer to refer any matter involving fraud "on the part of a contractor" to the appropriate agency official responsible for investigating fraud.  The use of "shall" denotes mandatory language.  <u>Andersen Consulting v. United States</u>, 959 F.2d 929, 932 (Fed. Cir. 1992).  Thus, when a contracting officer suspects fraud on the part of a contractor, the contracting officer cannot decide or resolve the claim.  <u>See</u> 48 C.F.R. § 32.210(b).  Instead, the contracting officer must refer the matter to the appropriate agency official for investigation.  <u>See id.</u> § 33.209; <u>accord id.</u> § 49.106 (requiring that a terminating contracting officer "discontinue negotiations and <u>report the facts under agency procedures</u>" when fraud or other criminal conduct related to the settlement of a terminated contract is suspected (emphasis added)).  Plaintiff simply does not address the relationship between sections 33.209 and 33.210(b).

During oral argument, plaintiff, for the first time, cited two Federal Circuit decisions in support of its position that Messrs. Glance and Demps issued invalid final decisions.  Yet, neither

decision supports this contention or discusses a contracting officer's authority to resolve or decide a contractor's claim raising issues of fraud on the part of the government agency.  For example, <u>Renda Marine, Inc. v. United States</u> stands for the general proposition that a contractor must file a timely appeal in order to challenge a contracting officer's final decision.  509 F.3d 1372, 1379-80 (Fed. Cir. 2007) (holding that the Court of Federal Claims did not abuse its discretion when it precluded the contractor from amending the complaint to challenge the contracting officer's final decision because the contractor, which had been informed of its rights, never filed a timely appeal and the court simply applied the clear language of the CDA).  Similarly, <u>D.L. Braughler Co. v. West</u> stands for the general proposition that a contracting officer has no authority to issue a final decision on a contractor's submission if the submission is not a "claim" for purposes of the CDA.  <u>See</u> 127 F.3d 1476, 1480, 1483 (Fed. Cir. 1997) (explaining that a claim must consist of a written demand seeking, as a matter of right, the payment of money in a sum certain and that claims exceeding a certain amount of money must be certified, and determining that the final decision issued by the contracting officer was valid).  In effect, <u>Renda Marine, Inc.</u> and <u>D.L. Braughler Co.</u> merely reaffirm that CDA jurisdiction in the Court of Federal Claims is dependent upon a contractor's submission of a claim and timely appeal of a contracting officer's final decision.

Even cases involving the suspicion of fraud on the part of a contractor and how a contracting officer's final decision addressed the fraud issue do not assist plaintiff.  For example, in <u>Medina Construction, Ltd. v. United States</u>, a case cited by defendant, the court determined that a contracting officer's final decision was unauthorized and invalid because the final decision was based upon an "unsubstantiated suspicion" that the contractor had submitted fraudulent invoices.  43 Fed. Cl. 537, 555-56 (1999).  Although the contracting officer was "specifically precluded from determining claims involving fraud through administrative channels," <u>id.</u> at 556, he nevertheless "persisted in his belief that [the contractor] had committed fraud in the submission of certain payment invoices," <u>id.</u> at 555; <u>see also id.</u> (noting that the "language in paragraph two of the final decision makes clear that the [contracting officer] impermissibly based his determination that [the contractor] had breached the contract upon his concerns surrounding the 'apparently fraudulent invoices'").  Because the contracting officer "proceeded to deny [the contractor]'s claim based upon unproved allegations of fraud" and used fraud as the sole ground upon which to deny relief, the court concluded that the final decision was invalid.  <u>Id.</u> at 556.  In the absence of a final decision, the court lacked jurisdiction over the contractor's claim and dismissed the complaint.  <u>Id.</u>

The contracting officer's final decision was invalid in <u>Medina Construction, Ltd.</u>, the court explained, because the contracting officer failed to "incorporate[] a reason, separate and distinct from the fraud allegations" for denying the contractor relief.  <u>Id.</u>  Indeed, the contracting officer determined that, because the contractor "submitted apparently fraudulent invoices, [it was] in breach of the contract and [was] thus not entitled to the additional payments [it sought] under the Contract[.]"  <u>Id.</u> at 555.  Here, the allegation of fraud was raised by Sonetech against the agency.  Moreover, even if Sonetech had been suspected of fraud, neither Messrs. Glance nor Demps issued final decisions denying Sonetech's claims based upon fraud.  Therefore, the

circumstances that rendered the final decision invalid in <u>Medina Construction, Ltd.</u> are wholly absent in this case.

A contacting officer's final decision is not automatically invalid even if the contracting officer cites fraud as a ground upon which to terminate a contract or deny a contractor's claim. In <u>Daff v. United States</u>, another case cited by defendant, the contractor filed suit seeking the payment of convenience termination costs.  78 F.3d 1566, 1570 (Fed. Cir. 1996).  The government alleged as an affirmative defense that the contractor's claims were barred by fraud and illegality, and then asserted a counterclaim for unliquidated progress payments under the contract and a second counterclaim under the False Claims Act.  <u>Id.</u>  Following a trial on the merits, the Court of Federal Claims awarded unliquidated damages to the government and imposed upon the contractor a civil penalty and treble damages under the False Claims Act.  <u>Id.</u> at 1570-71.  On appeal, the contractor argued that the court lacked jurisdiction over both its claims and the government's counterclaims because the contracting officer lacked the authority to issue a termination decision based upon allegations of fraud.  <u>Id.</u>  The Federal Circuit, however, determined that the court had jurisdiction, explaining that the contracting officer "stated two separate and distinct reasons for the default termination": (1) delivery by the contractor of defective hardware "as a result of solderers who worked on the contract not having received 'the minimum required level of training,'" thereby resulting in a failure on the part of the contractor to perform in accordance with the requirements of the contract; and (2) alleged falsification by the contractor of required records related to the certification of the solderers.  <u>Id.</u> at 1572.  Rather than justify contract termination based solely upon fraud grounds, the contracting officer "set forth a ground for the termination that the contracting officer was authorized to assert, <u>i.e.</u>, failure to perform according to the terms of the contract."  <u>Id.</u>  Thus, while the contracting officer discussed fraud as a ground for default termination, the contracting officer ultimately set forth a separate reason–based wholly upon the contract itself–for the default termination.  As such, the contracting officer issued a valid termination decision.  <u>See id.</u>

In instances where allegations of fraud are raised during contract performance, <u>Daff</u> and <u>Medina Construction, Ltd.</u> instruct that a contracting officer's final decision is valid if the decision is based upon a contractual ground.  Although Sonetech asserted fraud against the Navy during contract performance, Messrs. Glance and Demps denied Sonetech's claims entirely on contractual grounds.  The mere fact that Sonetech raised fraud against the agency does not in any way invalidate the contracting officers' final decisions, and neither <u>Daff</u> nor <u>Medina Construction, Ltd.</u> support plaintiff's position.  The April 11, 2005 and December 20, 2007 final decisions are therefore valid.

### 3.  Plaintiff's Claim for Unreimbursed Costs Is Untimely

Pursuant to 41 U.S.C.§ 609(a)(3), Sonetech was required to file suit within twelve months after receipt of the April 11, 2005 and December 20, 2007 final decisions.  It did not do so.  Nevertheless, plaintiff, relying upon <u>Eaton Contract Services, Inc.</u>, ASBCA Nos. 52888, 53069, 53070, 02-2 BCA ¶ 32,023, contends that its claim for unreimbursed costs is properly before the

court because it was filed within six years after the claim accrued.  Plaintiff argues that Sonetech was unable to submit a claim demanding a "sum certain" to Mr. Glance until after the DCAA issued a final rate determination in March 2007.  Because it filed suit in March 2010, less than six years after the claim purportedly accrued, plaintiff maintains that the court possesses jurisdiction over the claim.  Plaintiff is incorrect.

In Eaton Contract Services, Inc., the ASBCA addressed whether a claim properly set forth a demand for a sum certain, a jurisdictional prerequisite.  It did not discuss claim accrual or timely appeals of a contracting officer's final decision.  Eaton Contract Services, Inc. stands for the proposition that a contractor must submit a complete claim, rather than a mere portion, that sets forth a sum certain:

> The failure to meet jurisdictional requirements remains even if, as here, the "claims" contain one component (direct costs) which were stated in a sum certain but the overall "claim" is not.  We will not entertain that portion of a claim stated in a fixed amount and discard the remander, as an "entire claim is in a sum certain, or it is not."

Id. (quoting Manhattan Constr. Co., ASBCA No. 52432, 00-2 BCA ¶ 31,091).  Here, plaintiff suggests that Sonetech's claims were "preliminary claims" because Sonetech could not ascertain a final sum certain.  See supra note 16.  If plaintiff is correct, then its invocation of Eaton Contract Services, Inc. is perplexing: the ASBCA lacked jurisdiction over partial sum certain claims or, using plaintiff's terminology, "preliminary claims."  In essence, Eaton Contract Services, Inc. supports dismissal for lack of jurisdiction.  Plaintiff's reliance upon Eaton Contract Services, Inc., therefore, is clearly misplaced.

More importantly, plaintiff confuses what event triggers the six-year limitations period and fails to explain why its claim is not barred by the separate twelve-month limitations period set forth in 41 U.S.C. § 609(a)(3).  Before filing suit in the Court of Federal Claims, Sonetech was required to submit its claim for unreimbursed costs to the Navy's contracting officer within six years of that claim's accrual:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . .  Each claim by a contractor against the government relating to a contract and each claim by the government against a contractor relating to a contract shall be submitted within 6 years after the accrual of the claim.

41 U.S.C. § 605(a) (emphasis added).  Plaintiff asserts that its claim for unreimbursed costs accrued in March 2007.  Sonetech submitted that claim to Mr. Glance on July 18, 2007.[17]  Thus,

---

[17]  The exact date upon which Sonetech's November 22, 2004 claim accrued cannot be ascertained from the record.  Nevertheless, no claim could have accrued before 2000, the year in

Sonetech's July 18, 2007 claim was submitted to the Navy before the six-year limitations period set forth in section 605(a) expired.

The six-year limitations period set forth in section 605(a) relates to the period within which the contractor must submit a fully accrued claim to the contracting officer, not to the period within which a contractor must file suit in the Court of Federal Claims.[18]  As explained above, CDA suits in the Court of Federal Claims must be filed "within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim . . . ."  Id. § 609(a)(3).  Thus, whether plaintiff's claim was filed in the Court of Federal Claims within six years from March 2007 is not the relevant jurisdictional inquiry.  Instead, the question hinges upon whether plaintiff filed suit in the Court of Federal Claims within twelve months from the date it received Mr. Glance's April 11, 2005 final decision and Mr. Demps's December 20, 2007 final decision.  Plaintiff filed suit in the Court of Federal Claims in 2010, well beyond the twelve-month limitations period set forth in section 609(a)(3).  Accordingly, plaintiff's argument that its suit was filed within six years after its claim accrued is both obfuscatory and irrelevant.

Sonetech did not timely appeal Mr. Glance's final decision to the ASBCA, and it did not file suit in this court within twelve months after receipt of that decision.  Similarly, Sonetech did not timely appeal Mr. Demps's final decision to the ASBCA, and it did not file suit in this court within twelve months after receipt of that decision.  Accordingly, the court lacks jurisdiction over plaintiff's claim for unreimbursed costs.

## B.  Plaintiff's Improper Diversion of Funds Claim

The court next considers plaintiff's improper diversion of funds claim.  As part of this claim, plaintiff alleges that the Navy, on September 29, 2001, "expressed an absolute, definite, unconditional, and unequivocal manifestation to refuse to perform the entire Contract by diverting research development tasks under the Contract to another contractor under a different contract and by refusing to fully fund Sonetech's PADS development and demonstration . . . ."  Am. Compl. ¶ 35 (emphasis added).  Defendant, contending that plaintiff's improper diversion of funds claim accrued on September 29, 2001, argues that the court lacks jurisdiction over the claim because Sonetech failed to submit the claim to the contracting officer within six years of

_____

which Sonetech and the Navy entered into the contract at issue.  Therefore, Sonetech's November 22, 2004 claim was submitted to the Navy before the six-year limitations period set forth in section 605(a) expired.

[18]  Similarly, the six-year limitations period set forth in section 605(a) does not relate to the period in which a contractor must file an appeal with an agency board of contract appeals.  See 41 U.S.C. § 606 ("Within ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor may appeal such decision to an agency board of contract appeals . . . ." (emphasis added)).

the claim's accrual.

## 1. Sonetech's Claim Accrued in 2001

A claim accrues when "all events[] that fix the alleged liability of either the Government or the contractor and permit assertion of the claim[ are] known or should have been known.  For liability to be fixed, some injury must have occurred."  48 C.F.R. § 33.201.  According to plaintiff, Sonetech knew, as of September 29, 2001, that the Navy had diverted funding reserved for PADS technology to another contractor.  Am. Compl. ¶ 35; cf. Def.'s Ex. C at 4 (stating that public records show that $1.86 million was used to award Kildare a contract on September 28, 2011).  Plaintiff alleges that the Navy's diversion of funds allocated to Sonetech under the contract to Kildare constituted a breach of contract.  Therefore, Sonetech's claim for improper diversion of funds accrued no later than September 29, 2001, the date upon which Sonetech knew the Navy awarded to Kildare a contract with funds that Sonetech believed had been reserved exclusively for its contract.

## 2. Sonetech Did Not Submit a Claim to the Navy's Contracting Officer

Since Sonetech's claim for improper diversion of funds accrued on September 29, 2001, Sonetech was required, pursuant to 41 U.S.C. § 605(a), to submit its claim to the contracting officer within six years after that date.  Sonetech, however, never submitted a claim within six years.

As previously discussed, Sonetech submitted two claims to the contracting officer, one on November 22, 2004, and one on July 18, 2007.  Sonetech did not raise any issue of diversion of funds or demand $1.86 million from the Navy in its November 22, 2004 claim.  Consequently, Sonetech did not submit a claim for improper diversion of funds to the Navy's contracting officer on November 22, 2004.

In its July 18, 2007 claim, Sonetech sought $964,660 in unreimbursed costs, but it never set forth a claim for improper diversion of funds or demanded $1.86 million from the Navy.  Sonetech did, however, complain about inadequate funding and indicated its disapproval that $1.86 million "authorized for use only for [the PADS] demonstration program was instead applied by [the] ONR to a Kildare contract . . . , **a contract unrelated to PADS technology, and hence unrelated to the purpose for which the funds were appropriated and authorized**."  Def.'s Ex. C at 4.  This complaint does not constitute a CDA claim for improper diversion of funds.  Sonetech did not demand, as a matter of right, the payment of $1.86 million that it believed was designated for the contract.  See 48 C.F.R. § 52.233-1(c).  Instead, Sonetech merely questioned the propriety of agency action.  Mr. Demps responded directly to Sonetech's complaint, which he characterized as "both factually incorrect and irrelevant," and explained that "Congressional approval of an executive branch determination to reallocate available financial resources for a higher priority project . . . does not form the basis of a contractor claim against the Government."  Def.'s Ex. D at 5.  Consequently, Sonetech did not submit a claim for improper

diversion of funds to the Navy's contracting officer on July 18, 2007.[19]

Sonetech failed to submit a claim for improper diversion of funds to the contracting officer within six years of that claim's accrual. Nevertheless, plaintiff alleges that Sonetech submitted a claim for improper diversion to the contracting officer and that the claim was denied in a final written decision on March 4, 2009. For the reasons that follow, this allegation is wholly misleading and factually inaccurate.

First, plaintiff does not set forth the date on which Sonetech allegedly submitted the claim described in its allegation. The record only reflects that Sonetech submitted an undated letter to Inspector General Adams at some point prior to March 4, 2009. Therefore, the court cannot determine whether the undated letter to Inspector General Adams was submitted within six years of the date the claim accrued. Second, notwithstanding plaintiff's allegation, Sonetech addressed its undated letter to Inspector General Adams, not to the contracting officer as required by 41 U.S.C. § 605(a). There is no evidence in the record indicating that the contracting officer received Sonetech's undated letter, and the positions of inspector general and contracting officer are neither fungible nor interchangeable. Third, Sonetech's undated letter set forth no demand, as a matter of right, for the payment of the $1.86 million that it believed was designated for the contract or any other relief arising under or related to the contract. See 48 C.F.R. § 52.233-1(c). Instead, Sonetech enumerated what it believed were "possible violations of federal law by officials at the [ONR]," requested "the normal protections of the law" for whistleblowers, and expressed "sincere hope" that Inspector General Adams would reconsider Sonetech's claim for nonreimbursed costs that was denied in Mr. Demps's December 22, 2007 final decision.[20] Pl.'s Ex. 5 at 1. Because Sonetech never submitted a claim to the contracting officer, no final written decision of the contracting officer on that claim exists. A contracting officer's final written decision on a claim is a jurisdictional prerequisite to filing suit in the Court of Federal Claims. James M. Ellett Constr. Co., 93 F.3d at 1541-42.

In sum, Sonetech did not submit a claim for improper diversion of funds to the contracting officer within six years of that claim's accrual. Plaintiff's claim is therefore untimely. Furthermore, Sonetech did not set forth a claim in its undated letter to Inspector

---

[19] Assuming, arguendo, that Sonetech's July 18, 2007 claim for unreimbursed costs could be construed to have set forth a separate claim for improper diversion of funds, Mr. Demps, by rejecting Sonetech's contention that the Navy acted improperly in his final decision dated December 22, 2007, denied that claim. Thus, Sonetech would have been required to file suit in the Court of Federal Claims within twelve months from the date it received Mr. Demps's December 22, 2007 final decision. See 41 U.S.C. § 609(a)(3). It did not do so.

[20] In her March 4, 2009 response to Sonetech's undated letter, Inspector General Adams, as previously noted, determined that there was "not sufficient evidence to substantiate [Sonetech's] allegations that [the ONR] improperly conducted acquisition malpractice or other contract irregularities." Pl.'s Ex. 7. As a result, she closed Sonetech's case.

General Adams, who, in any event, was not the contracting officer.  As such, Inspector General Adams's March 4, 2009 response to Sonetech's undated letter cannot serve as the basis upon which the court can exercise jurisdiction over plaintiff's improper diversion of funds claim.

### IV.  CONCLUSION

For the reasons set forth above, plaintiff failed to satisfy the CDA's jurisdictional prerequisites before filing suit in the Court of Federal Claims.  The court is without jurisdiction over the amended complaint and, accordingly, defendant's motion to dismiss is **GRANTED**. The clerk is directed to **DISMISS WITHOUT PREJUDICE** the amended complaint pursuant to RCFC 12(b)(1) and to enter judgment accordingly.  No costs.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge